IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

LOREAL G. SZYMANSKI,

                       Plaintiff,                  Case No. 3:10 CV 1459

      -vs-

                                        MEMORANDUM   OPINION

COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.

KATZ, J.

       This case involves Plaintiff Loreal Szymanski's application for Social Security Disability

Insurance Benefits ("DIB").  The matter is currently before the Court pursuant to Plaintiff's

objections to Magistrate Judge James R. Knepp II's Report and Recommendation ("R&R"), which

recommends that this Court affirm the Commissioner of Social Security's decision to deny

Plaintiff's application.

       This Court exercises jurisdiction over the Commissioner's final decision pursuant to 42

U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830,

832-33 (6th Cir. 2006).  In accordance with *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir.

2001) and *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981), this Court has made a *de novo*

determination of the Magistrate's findings.  For the reasons stated herein, this Court adopts the

Magistrate's R&R in part, and remands the case to the Commissioner for further proceedings

consistent with this opinion.

**I.  Background**

       The Court hereby adopts the Magistrate's findings of fact as provided in the R&R, and as

follows:

**Procedural Background**

Plaintiff applied for DIB on March 9, 2004 alleging a disability onset date of November 5, 2003 based on migraines, fibromyalgia, and rheumatoid arthritis.  (Tr. 46-48, 61).  The state agency denied Plaintiff's application initially and on reconsideration. (Tr. 36-44).  Plaintiff requested a hearing. (Tr. 45). On June 20, 2007, an ALJ conducted a hearing in Toledo, Ohio. (Tr. 721-76).  Plaintiff appeared with counsel and testified.  (*Id.*).

On March 28, 2008, the ALJ issued a written decision denying Plaintiff's claim.  (Tr. 17-29). The ALJ found Plaintiff was not entitled to benefits because she could perform a limited range of sedentary work. (Tr. 22, 28). The Appeals Council denied review on February 26, 2010, (Tr. 6-9), rendering the ALJ's decision the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981. On June 30, 2010, Plaintiff filed the instant case. (Doc. 1).

## Factual Background

*Medical Evidence*

Plaintiff began seeing Dr. Mohammed Abusamieh, a rheumatologist, for fibromyalgia pain and possible rheumatoid arthritis in 2003. (Tr. 349). In the month before Plaintiff's alleged onset date, Dr. Abusamieh noted Plaintiff reported being "achy all over" and "[a]ccording to her, she had to resign from her job because she could not tolerate the pain and working at the same time." (Tr. 348).  Dr. Abusamieh's impression was Plaintiff's fibromyalgia was active, but he did not think she was "compliant with any exercise program and that does not help to improve the symptoms." (*Id.*). He "emphasized the importance of physical fitness" to Plaintiff and noted: "I did not like the idea that she resigned from her job because of the pain and it will augment the feeling of disability in her mind." He referred her to a fibromyalgia program. (*Id.*).

On February 12, 2004, Plaintiff returned to Dr. Abusamieh who noted she was "doing better" with "[l]ess aching, less tired and [was] more active." (Tr. 236). Plaintiff reported being unable to sleep, but was exercising 20 minutes per day and "doing a volunteer job for half a day." (*Id.*).

On May 13, 2004, Plaintiff was not feeling well and complained of shoulder, wrist, and hip pain. (Tr. 234). Dr. Abusamieh's impression was a fibromyalgia flare, bilateral rotator cuff tendinitis and bilateral trochanteric bursitis.  He thought she might be starting to show rheumatoid arthritis.

Also in May 2004, Dr. David Rath reviewed Plaintiff's medical records and completed a functional capacity assessment. (Tr. 129-34). He stated Plaintiff could occasionally lift or carry 50 pounds, frequently lift or carry 25 pounds, stand, walk or sit for about six hours in an eight-hour workday and was unlimited in her ability to push or pull. (Tr. 130). He also concluded Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 131-32).

On June 15, 2004, Plaintiff continued to complain of left hip pain and inability to sleep, however she was "less achy and less tired." (Tr. 232). Dr. Abusamieh's impression was possible early rheumatoid arthritis, stable fibromyalgia, and left trochanteric bursitis. (*Id.*).

In late June 2004, Plaintiff went to the hospital complaining of headaches. (Tr. 136-45). Her past history of headaches was noted, and notes indicate she "is feeling somewhat better after receiving one dose of IV Demorol." (Tr. 138). She was headache-free on discharge and doctors recommended continued medication. (Tr. 136). A brain angiogram and CT scan were both unremarkable. (*Id.*). Her final discharge diagnosis was "vascular/migraine headaches." (*Id.*).

On October 8, 2004, Plaintiff returned to Dr. Abusamieh "for follow-up of fibromyalgia." (Tr. 227). Plaintiff had not seen Dr. Abusamieh sooner due to financial problems. Plaintiff complained of pain and swelling in her left hand, morning stiffness, and interrupted sleep. Dr. Abusamieh's impression was active rheumatoid arthritis secondary to noncompliance with medications or clinic visit, stable fibromyalgia, and right trochanteric bursitis. Dr. Abusamieh re-started Plaintiff on methotrexate and changed some of her other medications. (*Id.*).

Plaintiff saw Dr. Abusamieh again on January 10, 2005 for follow-up of fibromyalgia and rheumatoid arthritis. (Tr. 347). She complained of aches and pains, particularly in her left shoulder and left hip. Dr. Abusamieh noted Plaintiff "claims compliance to medication" and "admits the lack of exercising claiming that there is no time for it." (*Id.*). The doctor noted no joint swelling. In a disability report also from January 2005, Dr. Abusamieh explained Plaintiff has rheumatoid arthritis and fibromyalgia "causing her to have widespread pain and tender points with intermittent restriction of her activities." (Tr. 225). She had no "motor loss or sensory deficits, or any reflex abnormalities" and "[n]o muscle atrophy" and no limitations on manipulation or walking. (*Id.*).

In February 2005, Dr. James C. Tanley, a neuropsychologist, evaluated Plaintiff. (Tr. 237-40). He concluded Plaintiff had a chronic adjustment disorder with depressed mood, borderline intelligence, and a pain disorder associated with a general medical condition. (Tr. 239). He assessed her Global Assessment of Functioning as 60.[1] (*Id.*). Dr. Tanley concluded Plaintiff's ability to relate to others was "mildly impaired by her pain behavior" and she

---

[1]

 A GAF score of 51-60 "indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 (6th Cir. 2006) (citing Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders (4th Ed., Text Rev. 2000)).

3

had a mild impairment in the ability to understand and follow simple instructions ("She can do this within the context of Borderline VIQ"), the ability to maintain attention to perform simple, repetitive tasks "within the context of Low Average PIQ", and moderate impairments in the ability to withstand the stress and pressure of daily work. (Tr. 240).

In March 2005, Dr. Robert Weisenburger, a state agency physician, reviewed Plaintiff's records and completed a functional capacity assessment. (Tr. 241-48). He concluded Plaintiff could lift twenty pounds occasionally, ten pounds frequently, stand or walk at least two hours in an eight-hour workday, and sit about six hours in an eight-hour workday. (Tr. 242). He stated Plaintiff was limited to "the midrange of frequent use" in gross and fine manipulation. (Tr. 244).

Also in March 2005, Plaintiff went to the emergency room with neck pain. (Tr. 395). Plaintiff was given Demerol, prescribed Vicodin and told to follow up with her doctor. (*Id.*).

In April 2005, Plaintiff reported increased shoulder pain to Dr. Abusamieh. (Tr. 346). She said her hips were better and admitted not exercising at all. The doctor found multiple tender points for fibromyalgia. He adjusted Plaintiff's medications and noted she should exercise. (*Id.*).
Joan Williams, a state agency reviewing doctor, completed a psychiatric functional capacity assessment in May 2005. (Tr. 249-67). She concluded Plaintiff had some moderate limitations (Tr. 263-64), but "retains capacity to comprehend and implement simple work tasks and adjustments" and "retains capacity to comport herself adequately for simple work site social exchanges" and "make simple work site adjustments." (Tr. 265).

In August 2005, Plaintiff saw Dr. Leo Clark, a neurosurgeon, for neck, shoulder, and arm pain, as well as headaches. (Tr. 306-08). Plaintiff reported aching down her arms greater on the left than right. (Tr. 307). A cervical spine MRI revealed a central and left-sided ruptured disc causing cord compression. (Tr. 308). Dr. Clark performed anterior cervical fusion surgery. (Tr. 309-10). At a follow-up appointment in September, Dr. Clark noted Plaintiff was healing well but had some tingling in her arms and muscle spasm. (Tr. 305).

In November 2005, Plaintiff returned to Dr. Abusamieh for the first time since April 2004. (Tr. 341). Plaintiff complained of "widespread aches and pains that [worst] at her hips" and achy shoulders. (*Id.*). Dr. Abusamieh advised Plaintiff about the importance of follow up visits, maintaining medication compliance, and regular exercise. (Tr. 345). Plaintiff missed her next two appointments and saw Dr. Abusamieh for the next time in February 2006 complaining of aches and pains, and some swelling in her hands and feet. (Tr. 333). Plaintiff was not exercising. (*Id.*). Dr. Abusamieh again counseled Plaintiff regarding medication, follow up visits, and exercise. (Tr. 335).

Plaintiff went to the hospital in February 2006 with right abdominal pain. (Tr. 389). Testing in March 2006 showed stomach ulcers. (Tr. 387-88). Dr. Sapna Reddy recommended a repeat endoscopy to determine if the ulcers

were healing, (Tr. 380), however there is no evidence in the record that this occurred (*see* Tr. 379).

In March 2006, Plaintiff went to the hospital with back pain after lifting furniture. (Tr. 604). Lumbar x-rays showed degenerative disc disease and disc space narrowing, but no acute fractures. (Tr. 615). Dr. Clark performed a hemilaminectomy with microsurgical dissection and removal of a ruptured disc. (Tr. 609-12). In April, Plaintiff had improved and reported to Dr. Clark she was considering returning to work. (Tr. 304). Dr. Clark recommended physical therapy. (*Id.*).

Plaintiff returned to Dr. Abusamieh in May 2006. (Tr. 329-30). Plaintiff complained of hip pain bilaterally, but reported her back was doing better after the surgery. She had not joined the physical therapy program. Dr. Abusamieh adjusted Plaintiff's medications and again counseled Plaintiff on follow-up appointments, taking medication as prescribed, and regular exercise. (Tr. 332).

Plaintiff again reported bilateral hip pain to Dr. Abusamieh in June 2006. (Tr. 325). She reported not attending physical therapy because her insurance would not cover it until July. He also noted: "She was supposed to be on Celebrex but she has not picked up her samples yet." (*Id.*). Dr. Abusamieh again adjusted Plaintiff's medications and counseled her about follow-up. (Tr. 328).

Plaintiff was in a car accident in July 2006 and fractured her left humerus. (Tr. 524, 539-41). She underwent surgery. (*Id.*). Also in July 2006, Plaintiff reported a migraine headache for several days. (Tr. 457-58). Dr. Abusamieh's notes from June and July 2006 note a history of migraines and migraine medication. (Tr. 323, 325).

In September 2006, Plaintiff reported increased right knee pain to Dr. Abusamieh. (Tr. 430). Dr. Abusamieh noted Plaintiff "did not use the Medrol pack fearing the side effects" and she "complains also of some pain in her hands but she tells me that she had lost her prednisone pills lately and she has not been taking them for the past couple of days." (*Id.*). He noted her status as "[w]orsening". (Tr. 432). In December 2006, Plaintiff was diagnosed with a migraine by Dr. Rosemarie Osowik. (Tr. 454).

In January 2007, Plaintiff had corrective surgery because her fracture had not fully healed. (Tr. 401-04). In the months following surgery, doctors found the fracture was "healing satisfactorily". (Tr. 412, 470).

Plaintiff saw Dr. Abusamieh in January and February 2007 with similar complaints. (Tr. 422-29). Each time Dr. Abusamieh examined Plaintiff and adjusted her medications. In January 2007, Dr. Abusamieh noted Plaintiff was upset the doctor did not refill her pain medications. (Tr. 429). Dr. Abusamieh explained that he "would not fill her prescriptions[,] especially pain medications[,] if [Plaintiff] does not show up for [her] appointment and for re-evaluation." (*Id.*).

Dr. Abusamieh noted Plaintiff's shoulder was "recuperating well and she's getting more range of motion around it" in April 2007. (Tr. 418). He also noted Plaintiff "continues to complain of widespread aches and pains" and "is not sleeping well at night." (*Id.*). Dr. Abusamieh concluded Plaintiff's rheumatoid arthritis was "doing well on the current regimen" and adjusted her fibromyalgia medications. (Tr. 420).

In June 2007, Dr. Abusamieh completed a questionnaire at Plaintiff's counsel's request. (Tr. 442-47). Dr. Abusamieh stated Plaintiff was capable of low stress jobs, and could walk two to three city blocks without pain. (Tr. 444). He said some of her medications might cause drowsiness or dizziness "[b]ut she has been tolerating it well." (*Id.*). He determined Plaintiff could sit for at least six hours in an eight hour day and stand or walk about two hours. (Tr. 445). He indicated Plaintiff would need to be able to shift positions at will, need to walk about five to seven minutes every hour and need one to two unscheduled breaks. (*Id.*). Dr. Abusamieh concluded Plaintiff could lift ten pounds occasionally and fewer than ten pounds frequently, and could stoop occasionally, but frequently bend, crouch, climb ladders and stairs. (Tr. 446). He stated Plaintiff could grasp, twist, or turn with her hands, and perform fine manipulation 50-70% of the workday with her right hand, and 30% with her left. (Tr. 447). He also stated she could reach overhead with her right arm 50-70% of the time, and never reach overhead with her left. (*Id.*). Finally, he opined Plaintiff would miss about two days of work per month. (*Id.*).

*Testimony*

Plaintiff testified that she lives in a house with her husband and 22 year-old son. (Tr. 733-34). She completed eleventh grade and previously worked as a secretary/receptionist. (Tr. 734-36).

Plaintiff testified she sees Dr. Abusamieh for shots in her hips and knees when they are hurting. (Tr. 739). She also sees Dr. Eberheim for her left arm, and Dr. Osowik for her migraines. (Tr. 740-41). Plaintiff testified that she is on Celebrex, Methotrexate, Prednisone, Topamax, Darvocet, Midrin, Celexa, folic acid, Estroven, aspirin, Lyrica, Toradol, and Hydroxyzine injections. (Tr. 743-45). When asked about side effects of medications, Plaintiff reported: "Sometimes I sleep a lot. Sometimes I'm awake a lot. It depends on the day. I could be awake for two days and then I'll sleep for an entire 24-hour period." (Tr. 745). She testified on a typical day she gets up, has breakfast and her medicine, and then watches television, lies down, eats dinner, and watches more television. (Tr. 746). Plaintiff can only use one hand while dressing herself, and her husband has to help her wash. (Tr. 748). She can make simple meals, and can grocery shop for about twenty minutes if she can use a cart. (*Id.*). Plaintiff does some home exercises and goes to therapy. (Tr. 749).

6

In response to questioning about whether she has any psychological impairments affecting her ability to work, Plaintiff responded: "Sometimes the pain gets so bad that I don't want to talk to anybody or see anybody. I'll just ignore the phone, shut off the TV, and lock all the doors." (Tr. 749-50). Plaintiff was not receiving mental health treatment, but was taking medication. (Tr. 750). Plaintiff doesn't have a problem getting along with people, but tends to avoid them. (Tr. 751). She testified she has no problems with concentration. (*Id.*).

Plaintiff testified she could lift a half-gallon of milk, but not a gallon, and could walk ten minutes in an eight-hour day, stand fewer than ten minutes in an eight-hour day, and sit for 30 minutes in an eight-hour day. (Tr. 752-54).

Plaintiff testified she has aching pain all over, a constant sharp pain in her lower back that moves from hip to hip, and pain in her knees. (Tr. 756). She said she gets four to five migraines a month lasting for one to three days each. (Tr. 757). When she gets them, she takes a Toradol injection. (Tr. 758). She testified she was taking Celexa for depression. (*Id.*).

Plaintiff said she cannot bend, stoop, or climb stairs. (Tr. 759). She said she can reach with her left arm, but can't pick anything up with it, but her right arm is okay. (Tr. 760). Plaintiff also testified that her hands get numb, the left more than the right. (Tr. 762).

Vocational Expert (VE) Joseph Thompson testified he is familiar with the jobs that exist in the region, and defined the region as "the northwest Ohio labor market area which would include the City of Toledo." (Tr. 764). The ALJ asked Thompson to:

> [a]ssume a hypothetical individual in the age range of 39 to 43; educated in the 11th grade level; past relevant work same as the claimant's; limited to light work with only occasional climbing of ladders, ropes, and scaffolds; frequently climb ramps and stairs; balance, stoop, kneel, crouch and crawl; [and who can] handle and finger and the mid-range of frequent use.

The ALJ asked Thompson how these restrictions would affect Plaintiff's past relevant work. (Tr. 765). Thompson testified it would not preclude Plaintiff's previous secretarial work as typically performed, but it might depend on if the position was performed at a medium level. (Tr. 766). He testified the clerical skills from Plaintiff's previous work would transfer to other sedentary work. (*Id.*). He gave three examples of sedentary semi-skilled positions including information clerk (approximately 800 jobs in the region), appointment clerk (approximately 1500 jobs) and telephone solicitor (approximately 750 jobs). (*Id.*). He testified there are approximately 10,000 semi-skilled jobs in the region given the hypothetical restrictions and transferable skills. (*Id.*). Thompson also testified there are approximately 30,000 light unskilled jobs in the region that would accommodate the hypothetical restrictions and gave

7

examples. (Tr. 767).  The ALJ then added a restriction to sedentary work, and simple, repetitive tasks, which eliminated the past work, but left 10,000 jobs available. (Tr. 768-69). Johnson testified if he were to accept all of Plaintiff's testimony, it would eliminate all jobs. (Tr. 769). Johnson also testified if he accepted Dr. Abusamieh's restrictions, no jobs would be available. (Tr. 770). Johnson stated if a sit/stand option were included, it would reduce the available jobs by approximately 50 percent to 5,000, and the example jobs he cited previously would still be included. (Tr. 775).

## II.  Standard of Review

This Court conducts a *de novo* review of those portions of the Magistrate's R&R to which Plaintiff objects.  28 U.S.C. § 636(b)(1).  In so doing, this Court reviews the ALJ's decision to determine whether it is supported by substantial evidence.  42 U.S.C. § 405(g).  This Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  The Court does not re-weigh the evidence, but must affirm the ALJ's findings as long as there is substantial evidence to support those findings, even if this Court would have decided the matter differently, and even if there is substantial evidence supporting the claimant's position.  *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).  "Substantial evidence is more than a scintilla of evidence, but less than a preponderance."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Lashley v. Sec'y of Health & Human Servs*., 708 F.2d 1048, 1053 (6th Cir. 1983).  The ALJ's decision is not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.  *Mullen*, 800 F.2d at 545.

8

## III.  Discussion

### A.  The ALJ Properly Considered the Opinion Evidence[2]

The ALJ declined to assign significant weight to Dr. Abusamieh's opinions that implied Plaintiff is disabled.  Tr. 26.  Specifically, Dr. Abusamieh–who is Plaintiff's treating physician–opined that Plaintiff needs to take unscheduled breaks at work, needs to walk five-to-seven minutes each hour at work, and needs to miss two days of work per month.  In discrediting Dr. Abusamieh's opinions, the ALJ reasoned that:

> **First**, the doctor's opinions here seem to be based more on the subjective complaints of the claimant than on any of his treatment notes.  **Second**, the need to walk for a few minutes every hour was not described as a need she had when at home.  And **third**, absences which would lead to job loss are absences which are over and above those allowed by the employer as sick days, personal days, and similarly excused absences.  There is nothing in the Exhibit 23F questionnaire that makes clear that the issue is not whether a person will miss two days of work per month, but whether the person will miss two days more than allowed by the employer.  As a result, the opinions expressed here by Dr. Abusamieh which imply disability cannot be given any significant weight.

Tr. 27.  (emphasis added).  The magistrate found the ALJ's conclusions were supported by substantial evidence.

The R&R thoroughly outlines the standard for assigning weight to various medical opinions:

> An ALJ must weigh medical opinions in the record based on certain factors. 20 C.F.R. § 404.927(d). In determining how much weight to afford

---

[2] Plaintiff makes numerous objections throughout her brief to the ALJ's allocation of weight among the various medical opinions in the record.  Doc. 20 at 1-2, 4-7, 11-12.  Aside from the objections specifically discussed above, Plaintiff advances substantially the same arguments as she does in her original brief to the Magistrate.  These arguments are thoroughly addressed by the R&R at 22-26, and this Court fully adopts the R&R as it relates to those issues.  There is no need to recite the Magistrate's well-reasoned analysis here.  In short, the ALJ's allocation of weight among the various medical opinions is supported by substantial evidence.  *See Id.*

a particular opinion, an ALJ must consider: 1) examining relationship; 2) treatment relationship – length, frequency, nature and extent; 3) supportability; 4) consistency; and 5) specialization. *Id.*; *Ealy*, 594 F.3d at 514.

Generally, medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)). A treating physician's opinion is given "controlling weight" if supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id.* Importantly, the ALJ must give "good reasons" for the weight it gives a treating physician's opinion. *Id.*

R&R at 22-23.

Plaintiff objects that substantial evidence does not support the weight assigned  Dr. Abusamieh's opinion on unscheduled breaks and the need to walk.  Plaintiff attempts to mitigate the discrepancy in Dr. Abusamieh's instructions for home and instructions for work by postulating that physicians do not generally tell patients to take unscheduled breaks or to walk at home, because patients can do so at will.  Moreover, Plaintiff contends that the need to walk every hour at home is "self-evident."  Doc. 20 at 1.  Plaintiff offers no case law and points to no evidence to show that physicians instruct their patients to take unscheduled breaks and to walk at work, but do not instruct them to do so at home.  *Cf. Ealy v. Comm. of Soc. Sec.*, 594 F.3d 504, 511 (6th Cir. 2010) (claimant's physician provided specific lift and reach restrictions to be followed before claimant returned to work).  Plaintiff also fails to explain her contention that the need to walk is "self-evident" at home, but not at work.  In short, Plaintiff offers nothing to contradict the substantial evidence cited by the ALJ in support of his assignment of weight to Dr. Abusamieh's

10

opinion on unscheduled breaks and walking. *See* SSR 96-2p, 1996 SSR Lexis 9, at *5 (It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is . . . inconsistent with the other substantial evidence in the case record."); *accord Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

Plaintiff also objects to the finding that missing two days of work per month will not prohibit Plaintiff from working. Specifically, Plaintiff claims it is unclear whether the two days per moth is inclusive or exclusive of vacation and sick days. As a result, Plaintiff argues the ALJ was required to recontact Dr. Abusamieh to clarify the issue pursuant to SSR 96-5p.

As explained by the Sixth Circuit in *Ferguson v. Comm'r of Soc. Sec.*, SSR 96-5p contains "two conditions that must both be met to trigger the duty to recontact: 'the evidence does not support a treating source's opinion . . . *and* the adjudicator cannot ascertain the basis of the opinion from the record.'" 628 F.3d 269, 273 (6th Cir. 2010) (citing 1996 SSR Lexis 2, at *16). Here, the ALJ does discredit Dr. Abusamieh's opinion as unsupported by the evidence. Moreover, Plaintiff contends the ALJ could not ascertain the basis of Dr. Abusamieh's opinion, citing the ALJ's statement that "[t]here is nothing in the Exhibit 23F questionnaire that makes clear that the issue is not whether a person will miss two days of work per month, but whether the person will miss two days more than allowed by the employer." Tr. 27. Plaintiff mis-construes the ALJ's statement. The ALJ does not cite the lack of specificity in Dr. Abusamieh's conclusion as a signal that he cannot ascertain the basis of Dr. Abusamieh's opinion. Indeed, the ALJ explicitly states that the basis of Dr. Abusamieh's opinion is clear: the opinion is based on Plaintiff's subjective complaints. Tr. 27. Instead, the ALJ cites Dr. Abusamieh's lack of specificity as another reason–in addition to the lack of medical evidence–why the opinion is not supported by the record.

11

Therefore, the ALJ did not err by declining to recontact Dr. Abusamieh, and the Magistrate was correct in finding that substantial evidence supports the weight assigned to Dr. Abusamieh's opinions.

**B.  The ALJ Properly Considered Plaintiff's Impairments**

**1.  *Kornecky v. Comm'r of Soc. Sec.*, and Implicit Resolution of Conflicts**

Plaintiff objects that the Magistrate improperly applied *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496 (6th Cir. Feb. 9, 2006), for the proposition that the ALJ was not required to discuss every piece of medical evidence in the record.  Plaintiff argues that the facts in *Kornecky* are distinguishable, and that, in any event, the ALJ may refrain from specifically discussing every piece of evidence only if he implicitly resolves conflicts therein.  Plaintiff's arguments are unpersuasive.

As explained by the Sixth Circuit in *Kornecky*,

> it is well settled that: "an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.  Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts."

167 Fed. Appx. at 507-08 (citing *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999).  Plaintiff attempts to distinguish *Kornecky* by pointing out that the physician in that case was merely an examining physician, whereas the physician whose opinions Plaintiff wishes to advance–Dr. Abusamieh–is a treating physician.  As discussed above, the ALJ gave appropriate weight to the various medical opinions of record.  Moreover, the distinction between examining and treating physicians was not relevant to the *Kornecky* Court's application of the rule in

12

question.  *See Id.*  Likewise, such a distinction does not have any bearing in this case on the ALJ's ability to consider all of the evidence without specifically discussing it.

Furthermore, to the extent the ALJ was required to implicitly resolve any conflicts in the evidence, he did so throughout his decision.  Plaintiff focuses on conflicts regarding the manipulative abilities in her hands.  As explained by the Magistrate's R&R, however, the ALJ's discussion implicitly resolved such conflicts:

> [T]he ALJ also noted Dr. Abusamieh had twice previously opined that Plaintiff had no limitations on fine and gross manipulation.  (Tr. 24, 225, 230-31).  Additionally, Plaintiff's most recent treatment note before the hearing indicates Plaintiff's "hands and feet pain improved markedly after starting the methotrexate." (Tr. 418). At that same April 2007 visit, Dr. Abusamieh's physical examination showed: "No bony hypertrophy.  No synovitis.  No tenderness" and "Normal [range of motion] of the wrist. Normal [range of motion] of the digits." (Tr. 419).

R&R at 24-25.  Moreover, in addition to manipulative abilities, the ALJ implicitly resolved various other conflicts in the record.  The ALJ noted that Plaintiff saw no mental health professionals despite claims of mental impairments, Tr. 24, noted "little, if any" support for Plaintiff's claims regarding the side-effects of her medications, Tr. 24-25, discussed numerous examples of exaggerations and inconsistencies in Plaintiff's record, Tr. 25, and noted that Plaintiff's behavior in seeking medical treatment in no way supports her claims of debilitating headaches.  Tr. 25.  Therefore, the ALJ adequately discusses Plaintiff's impairments, and his decision on this issue is supported by substantial evidence.

## 2.  Evidence of Plaintiff's Migraine Headaches

Plaintiff objects that the Magistrate improperly applied *Strong v. Soc. Sec. Admin.*, for the proposition that "[t]he ALJ reasonably relied on Plaintiff's lack of regular migraine complaints" when the ALJ discounted Plaintiff's testimony.  R&R at 15 (citing *Strong*, 88 F. Appx. 841, 846

(6th Cir. Feb. 3, 2004)). Plaintiff attempts to distinguish *Strong* on the grounds that the claimant in that case sought no treatment at all, whereas Plaintiff in this case did seek treatment. Plaintiff is incorrect to assume that an ALJ can discredit testimony only if there is a *total absence* of treatment. *See Williams v. Bowen*, 790 F.2d 713, 715 (8th Cir. 1986) (cited by *Strong*, 88 F. Appx. at 846) ("A claimant's allegations of disabling pain may be discredited by evidence that he or she has received minimal medical treatment and/or has taken medications, other than aspirin, for pain only on an occasional basis.").

Plaintiff also objects that the Magistrate improperly relied on *Anthony v. Astrue*, 266 F. Appx. 451, 457 (6th Cir. Feb. 22, 2008), by stating, "the fact that the ALJ did not find Plaintiff's migraines to be a severe impairment is irrelevant so long as all impairments are considered in determining Plaintiffs [RFC]." Plaintiff unpersuasively attempts to distinguish *Anthony* on a point of law not cited by the Magistrate, and not relevant to the R&R; namely, issues regarding the time line of Plaintiff's migraine complaints. Moreover, Plaintiff's argument that "possible negative treatment" exists in *Anthony*'s "Shepard's" report is unavailing, as Plaintiff fails to inform this Court as to what, if any, negative treatment exists.

### 3. Fibromyalgia

Plaintiff objects to the ALJ's analysis of Plaintiff's fibromyalgia, and Plaintiff asserts that the Magistrate takes Plaintiff's statements and Dr. Abusamieh's treatment notes out of context. "[B]y a process of omission and incomplete recitation, [the Magistrate] has managed to distort the record, as did the ALJ." Doc. 20 at 7. Plaintiff supports this argument by referencing various excerpts of her medical records that were allegedly ignored by the Magistrate and the ALJ, including references to pain and puffiness in Plaintiff's hands and hip, a hospital visit for a near

14

syncopal episode, limitation of spine movement, lack of response to cortisone treatments, indications that Plaintiff's pain may persist despite exercise, and reference to a state agency physician's opinion on certain physical activities.  *Id*. at 7-9.  Plaintiff's argument is not persuasive.

As explained above, an ALJ is not required to discuss every piece of evidence in the record.  *Kornecky*, 167 Fed. Appx. at 507-08; *see also Loral*, 200 F.3d at 453 (citing *NLRB v. Beverly Eters.-Mass.*, 174 F.3d 13 (1ˢᵗ Cir. 1999)) ("[T]he fact that the ALJ's opinion failed to discuss all of the testimony and evidence presented to him does not mean that the ALJ 'failed to consider' the evidence.").  Moreover, Plaintiff fails to inform this Court why the numerous excerpts she cites negate the substantial evidence supporting the ALJ's decision.  *See Young v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 59835, at *14 (N.D. Ohio June 6, 2011) (citations omitted) ("The Court does not re-weigh the evidence, but must affirm the ALJ's findings as long as there is substantial evidence to support those findings, even if this Court would have decided the matter differently, and even if there is substantial evidence supporting the claimant's position.").

### 4.  Plaintiff's Other Impairments

The Magistrate cited *Foster v. Bowen*, 853 F.2d 483, 488-89 (6ᵗʰ Cir. 1988), and *Coldiron v. Comm'r of Soc. Sec.*, 391 F. Appx. 435, 439 (6ᵗʰ Cir. 2010) for the proposition that "a diagnosis or surgery does not necessarily mandate a finding of disability."  R&R at 15.  Plaintiff objects to the Magistrate's application of *Foster* and *Caldiron*, apparently arguing that while diagnosis on its own is not enough, and surgery on its own is not enough, a diagnosis plus surgery is, because "surgery exemplifies [the] extent to which claimant's impairment has progressed."  Doc. 20 at 14.

15

Plaintiff does not cite any case law to support this contention, and her argument does not persuade this Court to circumvent the Sixth Circuit's plain rulings in *Foster* and *Coldiron*.  The ALJ's consideration of Plaintiff's impairments is supported by substantial evidence.

## C.  VE Testimony

### 1. Conformance of the VE's Testimony with the Dictionary of Occupational Titles

Plaintiff argues that the ALJ did not properly question the VE to ensure consistency between the VE's testimony and the Dictionary of Occupational Titles ("DOT").  Social Security Ruling 00-4p states that "before relying on [VE] evidence to support a disability determination or decision, [the ALJ]: must [i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence . . . and the [DOT], . . . and [e]xplain in the determination or decision how any conflict that has been identified was resolved."  2000 WL 1898704, at *1.  "[T]he adjudicator has an affirmative responsibility to ask about any possible conflict between [VE] evidence and information provided in the DOT [by asking the VE] if the evidence he or she has provided conflicts with information provided in the DOT . . . ."  *Id*. at *4.

Plaintiff concedes that the ALJ asked the VE whether his testimony comports with the DOT, and that the VE answered in the affirmative.  *See* Doc. 20 at 16; Tr. 769.  Plaintiff argues, however, that this is insufficient, asserting that SSR 00-4p requires the ALJ to ask the question *before* allowing the VE to offer evidence.  As stated by Plaintiff, "if VE testifies and then ALJ asks if testimony is consistent, now expectation is that VE is going to back track, reverse testimony, start explaining himself, etc."  Doc. 20 at 16.  "[I]t would be akin to closing barn doors after horses have already left the stalls."  *Id*.

16

Plaintiff offers no authority to support this extrapolation of SSR 00-4p's requirements. Conversely, the Ruling plainly states that the ALJ must ask the question before *relying* on the evidence in support of his determination.  2000 WL 1898704, at *1.  The Ruling says nothing of a requirement to ask the question before *taking evidence* into the record.  *See id*.  Therefore, Plaintiff's argument fails.

**2.  VE Hypothetical: Physical Limitations**

Plaintiff objects that the hypothetical proffered by the ALJ to the VE regarding available jobs was improper because it was based on physical limitation criteria provided by state agency review physicians, instead of limitations provided by Dr. Abusamieh.  Plaintiff's argument largely mirrors her unpersuasive arguments, *supra*, in which she asserts that the ALJ improperly gave more weight to the opinions of state agency review physicians than to that of Dr. Abusamieh.

"It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (citation omitted); *see also Parks v. Soc. Sec. Admin.*, 413 Fed. Appx. 856, *865 (6th Cir. Mar. 15, 2011) (citations omitted) ("Hypothetical questions . . . need only incorporate those limitations which the ALJ has accepted as credible.").  Here, the ALJ was not required to incorporate Dr. Abusamieh's limitations he found to be "based more on the subjective complaints of the claimant than on any of [Dr. Abusamieh's] treatment notes."  Tr. 27.  Instead, the ALJ appropriately based his hypotheticals on the state agency physicians' limitations he found supported by the record as a whole.  *See Blacha v. Sec'y of HHS*, 927 F.2d 228, 231 (6th Cir. 1990) ("If the hypothetical

question has support in the record, it need not reflect the claimant's unsubstantiated

complaints.").[3]

### 3. VE Hypothetical: Mental Limitations

Plaintiff objects that the ALJ's hypothetical regarding the number of jobs available to

Plaintiff was improper because it did not adequately reflect Plaintiff's mental limitations.  Doc. 20

at 15-16; Tr. 765-69.  Specifically, Plaintiff argues that while the ALJ restricted the hypothetical

to simple, repetitive tasks, he erroneously omitted restrictions related to Plaintiff's concentration,

persistence, and pace.  Doc. 20 at 15.

"[I]n order for the testimony of a [VE] to qualify as substantial evidence, the hypothetical

question posed to the [VE] must precisely describe the claimant's impairments."  *Whitmore v.*

*Bowen*, 785 F.2d 262, 263 (6th Cir. 1985).  The hypothetical need not invoke the exact language

used by the treating and examining physicians, but it must incorporate all credible mental and

physical impairments.  *Parks*, 413 Fed. Appx. at *865.

In this case, consultative psychological examiner James C. Tanley, Ex. 12F, Tr. 237,

opined that Plaintiff has "moderate difficulties in concentration, persistence or pace."  Tr. 26.

Moreover, the state agency reviewer's Psychiatric Review Technique Form ("PRTF"), Ex. 14F,

Tr. 249, indicates that Plaintiff has "Moderate Difficulties in Maintaining Concentration,

Persistence, or Pace."  Tr. 26.  The ALJ assigned "significant weight" to both of these opinions.[4]

---

[3]

Plaintiff's allegation that the ALJ engaged in "'shut down' procedures" to hinder Plaintiff's cross-
examination of the VE is baseless.  Doc. 20 at 18-19.  A simple review of the hearing transcript,
Tr. 770-74, shows the ALJ afforded counsel ample time to finish his questioning.  *See* Tr. 773
(counsel proffers, "And finally last question . . . .").

[4]

(continued...)

18

Tr. 26, 29.  When posing his hypothetical to the VE, however, the ALJ did not reference concentration, persistence or pace, but instead only restricted mental functions to simple, repetitive tasks.  Tr. 767-68.  Based on those restrictions, the VE testified there would be approximately 10,000 available jobs, including positions as telephone clerk, order clerk, and surveillance system monitor.  Tr. 28, 768-69.

Subsequent to the ALJ's hypothetical, Plaintiff's counsel cross-examined the VE and included concentration, persistence and pace restrictions:

> Q:    [A]nd would it be fair to say that the claimant had moderate
>       difficulties in being able to concentrate, persist, pace such that we'll
>       define moderate as being capable of . . . even being able to do up to
>       two-thirds of the day of a particular mental task such as
>       concentrating for extended periods or maintaining attention for
>       extended periods.  I would assume that that would eliminate most
>       work, would it not?
>
> A:    Based on that definition that would prohibit and eliminate unskilled
>       work by that definition certainly.

Tr. 771-72.  After cross-examination, the ALJ acknowledged the VE's statement that "no such person could be employed" under the hypothetical, Tr. 29, but disregarded the testimony as the

---

[4](...continued)
It is notable that the phrase "moderate difficulties in concentration, persistence or pace" does not specifically appear in Dr. Tanley's opinion.  *See* Ex. 12F, Tr. 237-40.  Indeed, in distinguishing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010), *infra*, from the case at bar, the Magistrate relied on this fact.  *See* R&R at 21-22 ("In *Ealy* . . . the ALJ failed to include a doctor's specific pace, speed, and concentration limitations in his hypothetical to the VE, even though he said he gave significant weight to that doctor's assessment.  Unlike *Ealy*, here the ALJ did not say he was giving significant weight to [Dr. Tanley's] opinion, and then not fully include that opinion in the hypothetical question.").  Citing Dr. Tanley's opinion at Exhibit 12F, however, the ALJ stated that "[Dr. Tanley] found . . . moderate difficulties in concentration, persistence or pace . . . ."  Tr. 26.  Moreover, regardless of Dr. Tanley's findings, Exhibit 14F reflects that the state agency reviewer found moderate difficulties in concentration, persistence or pace.  Tr. 259.  The ALJ placed "significant weight" on both findings.  Tr. 26, 29.

19

product of counsel's erroneous definition of the word "moderate." *Id*. "[T]he undersigned cannot accept the attorney's definition of 'moderate.' There is no such definition of 'moderate' in this context in the Social Security laws, regulations, rulings, or other binding directives. And there has been no argument put forward to show why the undersigned should adopt such a definition." *Id*. The ALJ did not articulate a corrected definition of "moderate," but instead based his decision on the testimony derived from his original hypothetical. The ALJ erred.

In *Ealy v. Comm'r of Soc. Sec.*, the Sixth Circuit held that an ALJ's determination that a plaintiff could perform a significant number of jobs was not supported by substantial evidence because the ALJ proffered a "streamlined hypothetical," which included restrictions of "simple, repetitive tasks," but completely omitted the "speed- and pace-based restrictions" from a state agency reviewer's opinion to which the ALJ had assigned weight. 594 F.3d 504, 516-17 (6th Cir. 2010). Specifically, the state agency reviewer had "concluded that Ealy retained the mental ability to 1) understand and remember simple instructions, [and] 2) sustain attention to complete simple repetitive tasks for two-hour segments over an eight-hour day where speed was not critical . . . ." *Id*. at 509. From this, the ALJ composed a hypothetical which stated: "'assume this person [is] limited to simple, repetitive tasks and instructions in non-public work settings.'" *Id*. at 516. The Sixth Circuit remanded the case to the ALJ because "Ealy's limitations were not fully conveyed to the [VE]." *Id*. "The hypothetical posed by the ALJ should have included the restriction that Ealy could work two-hour work segments during an eight-hour work day, and that speed of his performance could not be critical to his job. *Id*. (citing *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930-31 (E.D. Mich. 2005) (hypothetical limiting claimant to "jobs entailing no more than simple, routine, unskilled work" not adequate to convey moderate limitation in ability

to concentrate, persist, and keep pace) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at simple, unskilled, routine job."); *see also Whack v. Astrue*, No. 06-4917, 2008 U.S. Dist. LEXIS 14083, 2008 WL 509210, at *8 (E.D. Pa. 2008) (citing cases for the proposition that hypothetical restrictions of "simple" or "low-stress" work do not sufficiently incorporate the claimant's medically established limitations where claimant has moderate deficiencies in concentration, persistence or pace)).

By contrast, the Sixth Circuit held in *Smith v. Comm'r of Soc. Sec.*, that an ALJ's denial of disability was supported by substantial evidence even though it omitted specific reference to concentration, persistence or pace.  307 F.3d 377, 378 (6th Cir. 2001).  In that case, a PRTF indicated that the plaintiff "'Often' suffered 'Deficiencies of Concentration, Persistence or Pace Resulting in Failure to Complete Tasks in a Timely Manner.'"[5]  *Id*. at 378.  From this, the ALJ composed a hypothetical that "characterized [the plaintiff's] mental impairment as limiting him to jobs that are routine and low stress, and do not involve intense interpersonal confrontations, high quotas, unprotected heights, or operation of dangerous machinery."  *Id*.  On cross-examination the VE testified that the concentration, persistence or pace restriction in the PRTF "might render it impossible for [the plaintiff] to perform one or more of [the available jobs]."  *Id*. at 378-79.  In affirming the ALJ's decision, the *Smith* Court noted that the PRTF consisted of nothing more than a one-through-five rating scale, with "Often" representing one of the five possible choices for modifying "'Deficiencies of Concentration, Persistence or Pace."  *Id*. at 379.  Moreover, the PRTF was undercut by "four physicians who characterized Smith's concentration problems as minimal

---

[5]

Under the Commissioner's new psychiatric regulations, "moderate" limitations in concentration, persistence and pace parallel the prior category of "often."  *See  Edwards*, 383 F. Supp. 2d at 930 (Pepe, Mag. R&R) *adopted by* 2005 U.S. Dist. LEXIS 30315 (E.D. Mich. Aug. 5, 2005).

21

or negligible." *Id*.  Consequently, the Court found that the ALJ properly "translated Smith's condition into the only concrete restrictions available to him . . . and duly incorporated them into his hypothetical to the [VE]." *Id*.  Furthermore, to the extent the ALJ was required to address the "timeliness issue," he did so by precluding jobs with "high quotas." *Id*. at 380.

The facts of the instant case more closely parallel those in *Ealy*, and are distinguishable from those in *Smith*.  While the PRTF in this case, as in *Smith*, does not provide "concrete" concentration, persistence or pace limitations beyond a standardized one-through-five choice, the PRTF is not marginalized by the testimony of four physicians describing Plaintiff's limitations as "minimal or negligible." *Id*. at 379.  To the contrary, the PRTF is buttressed by Dr. Tanley's finding that Plaintiff has "moderate difficulties in concentration, persistence or pace," an opinion to which the ALJ assigned "significant weight."  Tr. 26.  Moreover, the *Smith* hypothetical made at least some reference to the "timeliness" aspect of concentration, persistence or pace.  307 F.3d at 380.  The instant hypothetical made no such reference, establishing "simple, repetitive tasks" as Plaintiff's only mental limitations.

The ALJ's hypothetical in this case should have included reference to concentration, persistence or pace.  Instead, the ALJ discounted concentration, persistence or pace testimony based on Plaintiff's articulation of the issue, and failed to pose the question himself.  As a result, the ALJ's hypothetical did not "accurately portray [Plaintiff's] physical and mental impairments" to the VE,  *Ealy*, 594 F.3d at 516, and the ALJ's decision was not based on substantial evidence.

**IV.  Conclusion**

22

Although the ALJ did not err in the other respects alleged by Plaintiff, the ALJ's conclusion that Plaintiff was able to perform a significant number of jobs was not based on substantial evidence because it did not properly consider Plaintiff's mental limitations related to concentration, persistence or pace.  Accordingly, the Magistrate's R&R is adopted in part, and Plaintiff's claim is remanded to the Commissioner for further proceedings consistent with this opinion.

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE